UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    *Plaintiff,*

    v.                          Case No. 18–CR-62 (PP-DEJ)

BRIAN L. GANOS, SONAG COMPANY, INC.,
MARK F. SPINDLER, AND NUVO CONSTRUCTION CO., INC.

    *Defendants.*

**DEFENDANT SONAG'S REPLY
SUPPORTING MOTION TO DISMISS**

## I.

## INTRODUCTION

The government initially grasps the principle of plurality in conspiracy, but loses hold in application. This superseding indictment alleges no one other than Brian Ganos who owned, acted for, or could control Sonag Co., Inc. While the government admits that Ganos and Sonag could not conspire, it insists that suddenly Sonag could conspire with other people and even with other corporations. No; Sonag's agreement necessarily was no more than Ganos's, for they are a unity. The longstanding principle of plurality controls here, not sovereign sophistry in application.

That sophistry itself would lead to practical trouble. The attempt to try or to punish both Sonag and Ganos for the conspiracies alleged in Counts 1 and 14 is an attempt to impose double jeopardy on Ganos. The government concedes that one essential purpose of an indictment is to alert the accused to that possibility. Yet on the government's departure from the plurality principle, Ganos truly would face conviction and punishment twice on both Counts 1 and 14: once for what he agreed as Brian Ganos and again for the self-same agreement as Ganos for Sonag. Same offense, same conduct, but two opportunities to convict and two punishments for each count.

Ganos rightly can be convicted of conspiracy, if the government can prove he agreed with another person or with a different corporation animated by more than one agent. But he and his solely-owned corporation remain a unity. Only he personally and the outside conspirator are a plurality.

## II.

## REPLY

### A. *Legal Fictions and Their Limits.*

Conspiracies are crimes of agreement; that is their essence. At a minimum, two minds are required for agreement. This is why no formalities or writing are required in the Seventh Circuit and elsewhere. Express or implied agreements are enough. SEVENTH CIRCUIT PATTERN JURY INSTRUCTION

(CRIMINAL) 5.09 (2012 & rev. 2013). But there must be an agreement. One mind produces only an idea. Two minds must meet to produce an agreement.

A corporation has no life of the mind. It has only a life of paper: articles of incorporation, bylaws, annual registrations with a state bureaucracy to remain in good standing, regular SEC filings if it is big enough. All is paper; there is no mind, no will, no sense of mischief. Those qualities belong exclusively to the human beings who are its agents. Human minds are essential to an agreement. That is as true inside a corporation as outside. The corporation becomes a "person" for many purposes, yes, but only as a matter of legal fiction.

Now, a corporation is a useful legal fiction all the same, up to a point. If adequately capitalized in good faith, it can encourage entrepreneurial spirit, to the general social good, by shielding some of the entrepreneur's other assets from risk of loss. Also, when two, or twenty-two, or twenty-two thousand work together, a corporation can provide a unifying purpose for them and give them unifying legal duties to something larger than those employees and agents, to an abstract but legally cognizable whole that is greater than the sum of its human parts. Especially if its shares are traded publicly, it can allow fractional ownership—and thus a chance at improved prosperity—for men and women and little pension plans whose puny capital otherwise would be inadequate to partake in the potential rewards of investment in equity, with its creation of value added. Corporations, legal fictions though they are, can be good things.

But there also are, and must be, limits on all legal fictions. Law imposes them as to corporations and has for as long as it has conjured these fictions. When a corporation is thinly capitalized, in actual or implicit bad faith, the law may allow an injured party to "pierce the corporate veil" and seek redress from the owners' personal assets. Similarly, courts may ignore the corporate form when the corporation is but the alter-ego of a human owner. And the commercial speech of corporations, although protected by the First Amendment, also quiets to restrictions that may not be imposed on individual speech. *See, e.g., Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553-55 (2001); *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 561-66 (1980).

The plurality principle is one more limitation on the legal fiction of the corporation. People may conspire with others, but they cannot conspire with themselves in the form of a corporation they own and control entirely. That is an impermissible intra-cranial conspiracy. A permissible intra-corporate conspiracy requires two or more living people within the corporation.

Although it acknowledges that principle here, the government would erode it in application. As the government would have it, even if there is no plurality within the corporation, the necessary plurality *as to the solely-owned corporation*, not just as to its human owner, can come with an outside person. All agree that Owner can conspire with Third-Party. On the government's theory, though, while Owner cannot conspire with himself in the form of his Solely-

Owned Corporation, magically now the presence of Third-Party enables both Owner and Solely-Owned Corporation to conspire with that Third-Party. What neither could do with the other, now both can do with the outsider. For the government, the arrival of an external reference point suddenly imbues the corporation itself with the mind and will that it lacks without that external reference point. As to Third-Party, the Solely-Owned Corporation now has a mind apart from its Owner. Magic; fiction without limits.

The government offers one case in support of its argument, which Sonag also cited: *United States v. Panhandle Trading, Inc.*, 2006 WL 1883436 (N.D. Fla. 2006). *See* United States' Response at 2, 8-9 (Docket No. 57, September 7, 2018). *Panhandle Trading* misapplied the plurality principle, in effect proposing to broaden and amend the indictment unconstitutionally, as Sonag explains in part II.B.2 below. But the government's reliance on one unpublished district court decision from Florida is telling, especially given its dismissive attitude elsewhere to other circuits and older cases. *See, e.g.*, United States' Response at 5-6, 7 n.2.

This Court should not erase limits as the government wishes. The plurality principle remains an important limitation on conspiracy itself, which is a doctrine that also threatens frequently to exceed the limits of its own logic and to ensnare peripheral people on implied "agreements" that can become, well, fictional.

5
StrangBradley, LLC
Case 2:18-cr-00062-PP-DEJ   Filed 09/17/18   Page 5 of 15   Document 63

The government offers no good reason to acknowledge the plurality principle in words, but to abandon it in practical application. In Part II.B below, Sonag offers good reasons to preserve it in application here.

But preliminarily, Sonag proposes some limits on other fictions. The government pretends that now, at the pleading stage, the Court and the parties must imagine that proof at trial might include actors other than Brian Ganos who were agents of Sonag. Those are fictions with limits that reality imposes. The government has produced well over 50,000 pages of discovery material under Rule 16, and Sonag has no reason to assert that the government is holding back what it should disclose. Nothing in the discovery discloses any other agent of Sonag who might have reached a criminal agreement: the discovery discloses no other agent of Sonag at all. The superseding indictment names no other agent of Sonag and attributes no overt act to Sonag, presumably because there are none. The government knows that best of all. It only pretends otherwise for convenience at the moment. Unbounded fiction serves the government in the short term. *See* United States' Response at 3, 5.

"L.M.," for example, to whom the government points as someone who perhaps conspired with Sonag, United States' Response at 5, the discovery reveals and the parties know was an outside professional consultant, not an employee or agent of Sonag. While Ganos himself possibly reached a criminal agreement with L.M., his corporation Sonag could not do that apart from him.

B.   *Reality.*

1.   <u>Double Jeopardy</u>.  Suppose that the government secured a second superseding indictment here that included present Count 1, and then repeated that count verbatim as a new Count 2.  Then suppose further that it did the same with present Count 14: included it again, and repeated it verbatim as a new Count 15.

Although there would be but one trial on the new superseding indictment, no federal court would fail to strike the redundant versions of Counts 1 and 14.  Even in one trial, the government may not charge a defendant twice under the same statute for the very same offense.  Forcing someone to secure two acquittals from a jury on just one crime, in other words, would be double jeopardy even in a single trial.  *See Bell v. United States*, 349 U.S. 81 (1955) (transporting two women in one trip and in one car was only one Mann Act violation, where Congress did not evince clear intent to make each separate woman a unit of prosecution).  Indeed, this is the very reason that multiplicitous charges—those splitting one offense into two or more counts—violate the Fifth Amendment's Double Jeopardy Clause.  It also is the reason that a defendant may not be convicted and sentenced both on an offense and on a second, lesser offense included in the first.  *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012) (multiplicity violates the Double Jeopardy Clause); *Brown v. Ohio*, 432 U.S. 161, 164-65 (1977) (no multiple punishments or convictions on lesser-included

and greater offenses); *United States v. Halliday*, 672 F.3d 462, 467-71 (7th Cir. 2012) (denying multiple-punishments double jeopardy claim under plain error standard); *see also Ex Parte Lange*, 85 U.S. (18 Wall.) 163 (1873) (roots of multiple punishments prohibition of Double Jeopardy Clause).

      a.    On the reasoning of the government's response to Sonag's motion here, this is precisely what the current superseding indictment does in slightly different form. Rather than charging the same offense in two identical counts, though, it charges the same defendant twice, under two names, in the same count. This case presents none of the vagaries of 'unit of prosecution' analyses or *Blockburger* comparisons of different statutes. The same conspiracies charged under the same statute in the same count plainly are at issue as to Counts 1 and 14.

      Sonag and Ganos themselves cannot conspire with each other: again, they are a unity, not a plurality. This much the government concedes. But on the government's view, adding third persons to a conspiracy count enables both Ganos and Sonag to conspire with others. Sophistry aside, though, Sonag's agreement necessarily *is* Ganos's agreement—no more, no less. For Ganos is the only one with a mind or the capacity to agree who also can act for Sonag. Without Ganos, Sonag is but a legal fiction, evidenced only by pieces of paper. It has no second owner, no second person sharing control, no second employee even. What Sonag does is only what Ganos does, period.

On the government's reasoning, it follows that for Ganos to win on Count 1 or Count 14, the jury must acquit him not once but twice: in his own proper person, and as Sonag as well. If the jury acquits only Ganos the person, but convicts Sonag the solely-owned and controlled corporation, Ganos still will face punishment. The possible fines for Sonag well exceed those possible for Ganos individually, and Sonag also faces criminal forfeiture provisions in the same indictment. Although not in successive trials, then, still Ganos must run the gantlet twice in one trial to avoid criminal punishment on Counts 1 and 14.

In short, the government's argument against Sonag's motion here would walk it and the Court straight into a double jeopardy problem for Ganos. That problem disappears if the Court simply applies the plurality principle and correctly dismisses both Counts 1 and 14 as to Sonag.

b. More broadly, the government should be cautious about the consequences here of its applied effort to stretch a legal fiction to keep both Ganos and Sonag as defendants. Because that effort implicates Ganos's double jeopardy protections, there is a cost that the government may not have considered. The Double Jeopardy Clause does not only protect an accused from double punishment or two convictions for one offense: it protects him from standing trial at all if at risk of jeopardy twice for the same offense. To vindicate that double jeopardy protection, the Supreme Court has acknowledged a right to an interlocutory appeal on a good faith double jeopardy claim, because win or

StrangBradley, LLC

lose at trial, the trial itself would nullify the clause's intended protection. *Abney v. United States*, 431 U.S. 651, 660-62 (1977).

Sonag cannot speak for Ganos here, of course, under the constraints of separate representation in court. But Ganos has joined this motion, and should consider an *Abney* appeal if the government's effort to try both him and his solely-owned, solely-controlled fictional creature succeeds on these pretrial motions. Counts 1 and 14 necessarily must allege the same offense against all named in them, and Ganos in reality is named twice and faces double punishment at least as a financial matter. Indeed, the corporate fine provisions of these statutes dwarf their individual fines. If Sonag remains a defendant, Ganos faces double jeopardy. *Abney* may allow him to appeal an adverse ruling on that issue before trial.

2. <u>Multiple Conspiracies</u>. Double jeopardy for Ganos and the prospect of an interlocutory appeal here are not the only concerns the government's attempt to circumvent the plurality principle raises. In another sophist's effort to avoid application of the principle, the government writes, "If a solely-owned or solely-controlled corporation conspires with an outside individual or separate corporation controlled by a different person, then the danger that conspiracy law is intended to combat . . . is indeed present." United States' Response at 8; *see also id*. at 8-9.

Work that through. The government concedes that Ganos and Sonag could not conspire as between themselves. Everyone concedes that Ganos, a human being, *could* conspire with outside people. The dispute is the government's contention that Sonag somehow could conspire with outsiders apart from Ganos. So necessarily, on the government's reasoning, in Count 1 Sonag would have a conspiracy with Nuvo Construction and Mark Spindler and maybe others; and Ganos also would have a conspiracy with Nuvo, Spindler, and maybe others; but Ganos and Sonag could have no conspiracy between themselves. In short, as the government reshapes it now, Count 1 would charge two separate conspiracies in one count: Sonag and others, excluding Ganos; and Ganos and others, excluding Sonag.

That would be a classic duplicitous charge problem. An indictment can charge only one crime per count, and a conspiracy count can charge only one conspiracy (although one conspiracy may have many criminal objectives; *see Braverman v. United States*, 317 U.S. 49 (1942)). When one count charges two conspiracies, there is no way to assure a unanimous verdict: some jurors might find only Conspiracy A proven and some might find only Conspiracy B proven, yet a general verdict on the single count would mask their lack of unanimity. That is the principal constitutional vice of duplicity.

There is another Fifth Amendment problem with the government's construction, too. The grand jury here clearly meant to charge only one

StrangBradley, LLC

conspiracy—one in which Ganos and Sonag, impossibly as a legal matter here, conspired with each other. The government's effort at mitosis to create two conspiracies in one count where the grand jury meant only one is an amendment that would broaden, not narrow, the affected counts. For that reason, it would violate the Grand Jury Clause of the Fifth Amendment. *United States v. Miller*, 471 U.S. 130, 135-45 (1985) (variances that only narrow the proof offered in support of and included under a properly-pled count, and that do not broaden the count, are not fatal amendments under the Grand Jury Clause of the Fifth Amendment); *see also Stirone v. United States*, 361 U.S. 212 (1960).

The problems are the same in both Count 1 and Count 14, and perhaps even more acute in the latter. In Count 14, the only two charged conspirators are Sonag and Ganos. Two other make-weight alleged conspirators, Sonag I, LLC and Trinity Marketing Services, Inc., also are solely-owned and solely-controlled corporations belonging to Brian Ganos. The discovery identifies the other specific person referenced, "L.M." The government knows as well as the defendants that L.M. was an independent professional consultant, not an agent of Sonag. So, Count 14 names solely-owned corporate entities that could not conspire with Ganos or Sonag as a matter of law, for want of plurality. It also names L.M. and the usual faceless stand-in suspects, others "known and unknown to the Grand Jury." On the government's reasoning, Count 14 would have to grow to allege two parallel conspiracies: Sonag and L.M. and maybe

anonymous usual suspects, but not Ganos because he and Sonag could not conspire; and then Ganos and L.M., again maybe with anonymous usual suspects, but not Sonag. Count 14 certainly fares no better than Count 1.

This mitosis would broaden and amend both relevant counts of the superseding indictment—and so violate the Grand Jury Clause of the Fifth Amendment. That is why the district court in *Panhandle Trading* gives the government no help. That court's "remedy" was to instruct the jury that one defendant and his two solely-owned companies could not be found guilty of conspiring with each other, but to allow the jury to convict anyway because the conspiracy alleged eight individual and corporate defendants. *Panhandle Trading*, 2006 WL 1883436, at *4; United States' Response at 9. That instruction would not solve a plurality problem. It would create a Fifth Amendment problem.

3. <u>Parade of Horribles</u>. In a final argument, the government plans a parade of horribles: what will happen if folks can form corporations, use those corporations to defraud other people, and then the corporations cannot be charged in a federal criminal conspiracy? United States' Response at 9.

What will happen is that the actual human being, the owner of the corporation, will face every charge the government can prove. And, if the corporation has two or more culpable agents—two human beings who agreed to something bad while acting within the scope of their corporate agency—the

13
Case 2:18-cr-00062-PP-DEJ   Filed 09/17/18   Page 13 of 15   Document 63

StrangBradley, LLC

corporation also will face charges. Even if the corporation could not conspire, both criminal and civil RICO remedies may be available, too. 18 U.S.C. §§ 1961(3), 1963, and 1964. Little or nothing will change practically.

In other words, the world will be no more horrible. The government should cancel plans for this parade.

## IV.
## CONCLUSION

Sonag Co., Inc. could not conspire with its sole owner, Brian Ganos, nor he with it. Necessarily, then, neither could Sonag conspire with anyone else; only Ganos could. On the government's theory, Ganos would face classic multiple-punishment double jeopardy and the Court would violate the Fifth Amendment's Grand Jury Clause by amending and broadening the superseding indictment. That government theory runs too far on fiction and ends in bad practical outcomes. The Court should dismiss both conspiracy charges, Counts 1 and 14, as to Sonag.

Dated at Madison, Wisconsin, September 17, 2018.

                          Respectfully submitted,

                          SONAG CO., INC., *Defendant*

                          */s/ Dean A. Strang*

                          Dean A. Strang
                          *Wisconsin Bar No. 1009868*
                          John H. Bradley
                          *Wisconsin Bar No. 1053124*

STRANGBRADLEY, LLC
33 East Main Street, Suite 400
Madison, Wisconsin 53703
[608] 535-1550
dean@strangbradley.com