UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        *Plaintiff,*

    *v.*                                  Case No. 18–CR-62 (PP-DEJ)

BRIAN L. GANOS, SONAG COMPANY, INC.,
MARK F. SPINDLER, AND NUVO CONSTRUCTION CO., INC.

        *Defendants.*

## DEFENDANT SONAG'S REVISED OBJECTIONS TO RECOMMENDATION TO DENY MOTION TO DISMISS COUNTS 1 AND 14

## I.

## INTRODUCTION

Five years ago, the United States Department of Justice published this warning: "So, can a corporation conspire with its own agents (that is, an 'intra-corporate' conspiracy), consistent with the principle that a private individual cannot conspire with himself?  The short answer: Yes, *provided the intra-corporate conspiracy involves at least two human actors.*"  Stephen Kubiatowski, *Intra-Corporate Conspiracies: The Limits to Conspiring With Your Own Corporation*, 61 UNITED STATES ATTORNEYS' BULLETIN 43-45 (July 2013) (italics added).

The Department was right then. It and the magistrate judge are wrong now, as to Sonag Co., Inc.

"A sole stockholder who completely controls a corporation and is the sole actor in performance of corporate activities, cannot be guilty of a criminal conspiracy with that corporation in the absence of another human actor." *United States v. Stevens*, 909 F.2d 431 (11th Cir. 1990). No federal court has disagreed with that proposition. It states what courts and commentators sometimes call the intra-corporate conspiracy rule. And the rule is consistent with the very origins of conspiracy, as this country's courts have known and developed that concept over the last century.

On this superseding indictment's own allegations, Brian Ganos was "the sole owner and president of Sonag Company, Inc." Superseding Indictment ¶ 11. No other person exercised any control over Sonag or acted for it, so far as the superseding indictment contends.

The specific question here is whether *Stevens* implicitly means that "another human actor" also must be within the corporation. The magistrate judge concluded that *Stevens* does not mean that. Sonag argues here that it does and, as a matter of fidelity to the real world, must.

So, Sonag objects to the magistrate judge's recommendation that this Court deny the motion to dismiss Counts 1 and 14. This Court's review is *de novo*, because the motion is dispositive. 28 U.S.C. §§ 636(b)(1)(B), (C).

StrangBradley, LLC

## II.

## FACTS

Sonag Company, Inc. is one of four defendants.  Two others are people, Brian Ganos and Mark Spindler.  The fourth is Nuvo Construction Co., Inc.

Sonag is a solely-owned corporation.  The superseding indictment affirmatively pleads that, "Brian L. Ganos was the sole owner and president of Sonag Company, Inc."  It describes Sonag as "a Wisconsin corporation that performed construction work."  Superseding Indictment ¶11.  Further, the superseding indictment alleges affirmatively that this described Sonag at "all times material."  Superseding Indictment, p. 4 (preface to ¶ 11).

In short, according to the superseding indictment itself, Ganos was the sole owner of Sonag at all material times.  Nowhere does the superseding indictment allege any person or entity other than Ganos who worked for, controlled, or acted on behalf of Sonag.

Nonetheless, Counts 1 and 14, which both allege conspiracies in violation of federal conspiracy statutes, name Sonag Co., Inc. as a defendant.  Superseding Indictment, pp. 1-11 (Count 1, alleging a violation of 18 U.S.C. § 1349); Superseding Indictment, pp. 15-18 (Count 14, alleging a violation of 18 U.S.C. § 1956(h)).  Neither Count 1 nor Count 14 attributes any act to Sonag.  Only Ganos or other natural persons allegedly committed any overt acts.

StrangBradley, LLC

As to Sonag, the superseding indictment claims only conspiracy, not any substantive act or crime.  In Count 1, Sonag allegedly conspired with Ganos, Nuvo Construction Co., Inc., and Mark Spindler, as well with unnamed others known and unknown.  In Count 14, Sonag allegedly conspired with Ganos, and again, others known and unknown.  Only these two conspiracy counts of the superseding indictment name Sonag.

By contrast, the only counts that directly concern Sonag assets, Counts 18-24, name Ganos alone as a defendant.  Those counts allege unlawful financial transactions moving Sonag assets from one Sonag account to another Sonag account.  Superseding Indictment, pp. 21-22.  Ganos's control over Sonag bank accounts coincides with his exclusive control over Sonag generally.

## III.

## OBJECTIONS

In English law, the concept of conspiracy is over 700 years old.  The first conspiracy statutes in England date to the late 13th and very early 14th centuries. Conspiracy was quite limited, and in a sense required a completed crime: two or more people who combined to make a false civil or criminal charge could be liable for conspiracy if the innocent victim in fact was compelled to defend or indicted and then acquitted.  *See* Percy Henry Winfield, THE HISTORY OF CONSPIRACY AND ABUSE OF LEGAL PROCEDURE 92-96 (Cambridge U. Press 1921).

StrangBradley, LLC

In 1611, the Court of Star Chamber broadened conspiracy to apply to an incomplete offense, in the *Poulterers Case*.  The poultry mongers there were liable even though the competitor they conspired to frame never was indicted; he was so obviously innocent that the grand jurors had refused.  Francis B. Sayre, *Criminal Conspiracy*, 35 HARV. L. REV. 393, 395-99 (1922).

With these modest antecedents, for centuries conspiracy did not take off in England.  Only after the *Poulterers Case* did conspiracy become a common-law crime, more than three hundred years after the first conspiracy statute.  Sayre, *Criminal Conspiracy*, 35 HARV. L. REV. at 394-99; *Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. 920, 923 (1959).  But criminal conspiracy really flourished for the first time in the early 20th century United States.  By 1925, normally buttoned-down Judge Learned Hand famously referred to conspiracy as "the darling of the modern prosecutor's nursery."  *Harrison v. United States*, 7 F.2d 259, 263 (2d Cir. 1925).  The challenge for American courts since has been to limit the scope of conspiracy doctrine in principled ways, without hampering prosecutors unreasonably.

Here, the magistrate judge proposed to strike the balance this way: while he acknowledged that a solely-owned corporation and its owner cannot alone conspire, he concluded that they can be members of a conspiracy if at least one other outside human being also conspires.  In other words, according to the magistrate judge, when at least one outsider joins, a solely-owned corporation

StrangBradley, LLC

*can* conspire with its owner. This is the key to the magistrate judge's recommendation. *See* Report & Recommendation (Docket No. 90) at 6 (properly framing the issue, "at the intersection of corporate and conspiratorial liability"), 2, 10, 12 (rejecting Sonag's argument that the solely-owned corporation cannot conspire with its owner).

That reasoning takes to the edge, or past, the fiction that a corporation is a "person." As the magistrate judge has it, once there are two human beings who conspire together, the inanimate corporation that one of them owns and controls entirely now becomes animated, develops a mind of its own, and may join the conspiracy as a legally distinct third participant. If Dorothy creates the scarecrow and then alone has an idea, the scarecrow is only that: a straw-stuffed dummy. But if an outsider, Glinda the good witch, reaches an agreement with Dorothy on that same idea, now suddenly the scarecrow is imbued with the brain he never had, springs to life, and may conspire as a third. He does that even though Dorothy made him and controls him.

The magistrate judge's hypothesis can be expressed mathematically instead. One plus her solely-owned corporation still is one; the plurality necessary to a conspiracy is missing. But one *plus* one outsider *plus* that same zero, the solely-owned corporation, now is not two; it is three. At least it is in the magistrate judge's mathematical scheme.

StrangBradley, LLC

The Court will have to decide whether it will carry a legal fiction quite this far. Fictions already are odd things in a system of thought and rules—law—that purports to set truth-seeking as its highest goal and claims to pursue truth by facts; by evidence-based decision-making. Our law demands truth from witnesses, with a conspicuous ritual of oath-taking and the threat of prosecution for telling fiction as assurances of truthfulness. It demands candor from lawyers, by ethical rule and threat of sanction. Law has nonfiction as its highest aspiration and mostly as its stated methods. When should fiction drive its outcomes, then? As this Court considers *de novo* how far to follow the magistrate judge with fiction, history offers the best starting point.

### A. Conspiracy: Plurality Rule.

As a matter of axiom, a conspiracy is an agreement between two or more people to commit a crime. *Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. at 926-34; *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) Sarah N. Welling, *Intracorporate Plurality in Criminal Conspiracy Law*, 33 HASTINGS L.J. 1155, 1179 (1982); *see also* SEVENTH CIRCUIT PATTERN JURY INSTRUCTION (CRIMINAL) 5.09 (2012 & rev. 2013) (allowing express or implied agreements, but otherwise axiomatic). As in the *Poulterers Case*, it remains an inchoate offense: mere agreement is the crime (maybe with some overt act as the so-called *locus poenitentiae*, a limiting principle that no longer is essential to some conspiracy statutes). A conspiracy is a crime itself, in other words, whether the

StrangBradley, LLC

substantive offense comes to pass or does not. But the plurality principle—conspiracy requires more than one—remains embedded deeply.

The main rationales for punishing a mere compact between two minds? That when two or more work in concert, they are more likely to accomplish the harmful end than if only one set out on a solo mission. Plus, American courts have added for many decades, conspiracies carry the risk of ancillary crimes as they necessarily put more than one wrongdoer to work, and make detection of the crime less likely. *See, e.g., Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. at 923-25; *United States v. Rabinowich*, 238 U.S. 78, 88 (1915); Welling, *supra*, at 1180-81 (breaking these into six rationales).

This all is basic, concededly. American courts have held fast to the plurality rule or principle as an essential limitation on the concept of punishing conspiracies, upstream even from an attempt to commit a substantive offense. *See generally Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. at 949-56. The overt act limitation has fallen away with some conspiracy statutes. But the plurality limitation has not. As it is, American prosecutors and courts (and legislators) in the past century have embraced conspiracy charges more enthusiastically than their counterparts in other English-speaking countries.

Ours is the land of conspiracy, then, often in the preeminent position of Count One in an indictment. Yet a conspiracy still takes two people. So, the plurality principle remains an essential constraint.

StrangBradley, LLC

Without it, the justifications for punishing conspiracy vanish. If an idea is limited to the mind of one person, he may or may not act on it, attempting a crime. But the chances of a completed crime occurring when only one person holds that notion can be met entirely with the law of the inchoate offense of attempt. There is none of the synergy of a committed accomplice, acting in accord, to elevate the chances of criminal success and to warrant reaching back to punish the agreement before the attempt. Indeed, without at least one other mind in accord, there is no "agreement" in any coherent sense at all; there is only a bad idea hiding between two ears. That idea may die or remain inert. Only if two or more people share it, affirm it mutually, does the risk arise that the inertia or second thoughts of one person will not stop action of the other, or that each will be emboldened by a sense of shared mission.

As a matter of principle, then, a conspiracy cannot occur unless two human minds reach an agreement to commit a crime. But what of the artificial "person" that statutes animate, the corporation? In general, a corporation can be charged with a crime. Can it also conspire? Courts long have wrestled with that question, and the answer sometimes depends on whether the action is civil or criminal, and even on the conspiracy statute at issue. *See generally* Welling, *supra*.

**B.** **Intra-Corporate Conspiracies.**

Before the modern era, American courts took very seriously the restriction that conspiracy required two legally separate human beings. A single

legal entity simply could not conspire, even if it actually was composed of two people. Through the 19th century and into the 20th, for example, as a matter of law a husband and wife could not form a conspiracy. Their marriage merged them into a unity as a legal matter, so the required plurality was missing. *Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. at 949; I HAWKINS, PLEAS OF THE CROWN 351 (6th ed. 1788); *Johnson v. United States*, 157 F.2d 209 (D.C. Cir. 1946) (the first American federal court to reject the rule that husband and wife could not conspire together, for want of plurality).

On that same technical principle, for many years a corporation could not conspire, either. It was a unitary entity, if only by legal fiction, so even if it had one hundred employees feverishly plotting crimes that would require more than one to complete, the corporation itself was not a cognizable conspirator. *Developments in the Law: Criminal Conspiracy*, 72 HARV. L. REV. at 951; BALLANTINE, CORPORATIONS § 113, at 276 (rev. ed. 1946).

That rule persists today under the Sherman Act. There, two or more agents within just one corporation still cannot form an antitrust conspiracy under § 1 of the Sherman Act; at least a second, outside entity must join the criminal agreement in restraint of trade. *See, e.g., Copperweld v. Independence Tube,* 467 U.S. 752 (1984) (a corporation and its wholly-owned subsidiary are incapable of conspiring with each other for purposes of § 1 of the Sherman Act); *Morton Buildings of Nebraska, Inc. v. Morton Buildings, Inc.,* 531 F.2d 910, 918-20 (8th Cir.

1976); *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 917-18 (5th Cir. 1952). That probably makes sense in antitrust cases. It is hard to see how an agreement of two, twenty, or two hundred people within Corporation A could restrain trade in the market. One or more agents of Corporation B also would have to join the conspiracy, so that Corporations A and B act collusively, for any actual anticompetitive effect to occur. What Corporation A does alone is the behavior of only one market actor. That well might be monopolistic, which would present a problem under § 2 of the Sherman Act. But it would not make a § 1 conspiracy in restraint of trade.

However, in other settings like those here, an intra-corporate conspiracy now is possible in criminal cases. Generally, outside antitrust, employees or agents of a corporation may reach a criminal agreement amongst themselves, and for that, the corporation may be liable. Elena DeSantis, *Federal Criminal Conspiracy*, 55 AM. CRIM. L. REV. 1193, 1197 (2018).

All of the cases approving criminal liability for intra-corporate conspiracy, though, still speak of or suggest the plural within the corporation itself. An intra-corporate conspiracy requires two or more agents of that corporation, not just one. *See United States v. Hughes Aircraft Co., Inc.*, 20 F.3d 974, 979 (9th Cir. 1994); *United States v. Sain*, 141 F.3d 463, 474-75 (3d Cir. 1998); *United States v. Hartley*, 678 F.2d 961, 970-72 (11th Cir. 1982), *cert. denied*, 459 U.S. 1170 (1983); and *see generally* Shaun P. Martin, *Intracorporate Conspiracies*, 50 STANFORD

StrangBradley, LLC

L. REV. 399, 411-422 (1998); Welling, *supra*, at 1184-91. Sonag has found no federal case holding that an intra-corporate conspiracy arose where only one person in fact acted for, spoke for, or was employed by the corporation.

### C. *Sonag Could Not Conspire.*

The intra-corporate conspiracy rule does not help the government here, then. No second agent or person had any authority to act for Sonag. So far as this superseding indictment—or for that matter, objective reality—is concerned, owner Brian Ganos alone acted for Sonag. No one else allegedly did or said anything for Sonag. Neither could anyone else have done or said anything in the name of Sonag or to bind Sonag. There was no "intra" as to the corporation, then. At most, there was "intra" to Brian Ganos's head. Intra-corporate conspiracies are possible when two or more populate the corporation's roster. But intra-cranial conspiracies are not.

Unsurprisingly, then, the counts that allege transfers of money from one Sonag account to another Sonag account name only Ganos. Superseding Indictment, Counts 18-24. He alone could have transferred that money.

The exception that a solely-owned or solely-controlled corporation cannot conspire, intra-corporate conspiracy rule notwithstanding, dates back at least to 1956. And it rests on concern about the proper limits of legal fictions. In *United States v. Carroll*, 144 F. Supp. 939 (S.D.N.Y. 1956), the court considered post-verdict motions to dismiss. The indictment had charged Sheba Bracelets,

StrangBradley, LLC

Inc. and four men, including Carroll, with conspiracy and other crimes. Granting the motion of Carroll and Sheba Bracelets, Inc. to dismiss the conspiracy count, the district court explained:

> The evidence has failed to reveal the ownership of Sheba Bracelets, Inc. Because of its dominance by Carroll, and because of the absence of evidence inculpating anybody else in the corporation, a conspiracy, if it is to be found, must be found between the defendant Carroll and the business institution he used to carry out his purposes. Such a finding, it seems, would over-extend the fiction of corporate personality.

*Carroll*, 144 F. Supp. at 941.

The most influential current statement of this limitation came more than thirty years after *Carroll*, in *United States v. Stevens*, 909 F.2d 431 (11th Cir. 1990). There, the Eleventh Circuit reversed a man's conspiracy conviction because "a sole stockholder who completely controls a corporation and is the sole actor in performance of corporate activities, cannot be guilty of a criminal conspiracy with that corporation in the absence of another human actor." *Stevens*, 909 F.2d at 431; *see also id.* at 432-34. Given the grounding of the history of corporate liability for conspiracy, and of *Carroll's* articulation of the intra-corporate conspiracy rule, *Stevens* implicitly refers to another human actor within the corporation.

Other courts have followed. *See, e.g., United States v. Peters*, 732 F.2d 1004, 1008 n.6 (1st Cir. 1984) ("A corporate officer, acting *alone* on behalf of the corporation, could not be convicted of conspiring with the corporation;" italics in

original); *United States v. American Grain & Related Industries*, 763 F.2d 312, 320 (8th Cir. 1985) ("a corporation can be convicted of criminal conspiracy for the acts of two or more of its agents 'conspiring together on behalf of the corporation'"); *United States v. Giuseppe Bottiglieri Shipping Co., S.PA.*, Criminal No. 12-0057 slip op. at 4 (S.D. Ala. May 24, 2012) (2012 WL 1899844) (denying motion to dismiss conspiracy count as to corporation and one agent where the indictment explicitly alleged that other agents and employees of the corporation also conspired with the human defendant); *United States v. Spiezio*, 523 F. Supp. 264, 266, 271 (E.D. Pa. 1981) (conspiracy conviction of corporation and its principal operating officer could stand where the third defendant also was an employee of the corporation, and a conspirator); *United States v. Consolidated Coal Co.*, 424 F. Supp. 577, 578-81 (S.D. Ohio 1976) (conspiracy conviction of corporation and agents proper where eight individual conspirators were employees or agents of the corporation); *United States v. Panhandle Trading, Inc.*, 2006 WL 188346 (N.D. Fla. 2006) ("[a] corporate officer, acting alone on behalf of the corporation, could not be convicted of conspiring with the corporation," quoting *Carroll* and citing *Stevens* and *Peters*); *see also* Welling, *supra*, at 1191-1201.

The magistrate judge faulted Sonag and Ganos here. They "have not cited any authority to support their claim that a solely owned corporation and its owner cannot be members of the same conspiracy as a matter of law," he wrote. Report & Recommendation (Docket No. 90) at 10.

But in fact, *Stevens* and *Peters* implicitly support Sonag squarely. And at least *American Grain*, *Giuseppe Bottiglieri Shipping Co.*, *Spiezio*, and *Consolidated Coal* all support Sonag in practical application.

In short, two or more employees or agents of one corporation may conspire, and the corporation may be held responsible on a *respondeat superior* theory when they do. Here, Brian Ganos himself might have conspired personally, with one or more other human beings outside Sonag. So Ganos can be convicted of conspiracy. But Sonag could not have conspired. There was no second person within its walls, no second person who could have acted to form the plurality of agreement necessary to an intra-corporate conspiracy.

**D.** ***The Magistrate Judge's Extension: May an Outsider Transform the Solely-Owned Corporation into a Conspirator?***

The magistrate judge instead adopted entirely the government's argument that, so long as the human owner of a one-person corporation conspired with an outside human (or corporation), now his or her solely-owned corporation also may come to life as a separate conspirator. That is a fiction two-fold: one, that a corporation is a "person" for legal purposes; and two, that the corporate "person" may be imbued with cognition and will independent of a single human creator, controller, and employee as soon as an outsider appears.

The former is a longstanding, established legal fiction. The latter is not.

Sonag turns now not to the viability of a solely-owned corporation as a "person," then, but to the viability of the proposed second fiction about it. The magistrate judge's recommendation rests on that second fiction.

1. In truth, a corporation has no life of the mind. It has only a life of paper: articles of incorporation, bylaws, annual registrations with a state bureaucracy to remain in good standing, regular SEC filings if it is big enough. All is paper; there is no mind, no will, no sense of mischief. Those qualities belong exclusively to the human beings who are its agents. Human minds are essential to an agreement. That is as true inside a corporation as outside. The corporation becomes a "person" for many purposes, but only as a matter of legal fiction.

Now, a corporation is a useful legal fiction all the same, up to a point. If adequately capitalized in good faith, it can encourage entrepreneurial spirit, to the general social good, by shielding some of the entrepreneur's other assets from risk of loss. Also, when two, or twenty-two, or twenty-two thousand work together, a corporation can provide a unifying purpose for them and give them unifying legal duties to something larger than those employees and agents, to an abstract but legally cognizable whole that is greater than the sum of its human parts. Especially if its shares are traded publicly, it can allow fractional

ownership—and thus a chance at improved prosperity—for men and women and little pension plans whose puny capital otherwise would be inadequate to partake in the potential rewards of investment in equity, with its creation of value added.  Corporations, legal fictions though they are, can be good things.

But there also are, and must be, limits on all legal fictions.  Law imposes them as to corporations and has for as long as it has conjured these fictions.  When a corporation is thinly capitalized, in actual or implicit bad faith, the law may allow an injured party to "pierce the corporate veil" and seek redress from the owners' personal assets.  Similarly, courts may ignore the corporate form when the corporation is but the alter-ego of a human owner.  And the commercial speech of corporations, although protected by the First Amendment, quiets to restrictions that would be impermissible on individual speech.  *See, e.g.*, *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 553-55 (2001); *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n*, 447 U.S. 557, 561-66 (1980).

The plurality principle is one more limitation on the legal fiction of the corporation.  People may conspire with others, but they cannot conspire with themselves in the form of a corporation they own and control entirely.  That is the impermissible intra-cranial conspiracy.  A permissible intra-corporate conspiracy requires two or more living people within the corporation.

Although they acknowledged the general principle here, the magistrate judge and the government would erode it in application.  As they

StrangBradley, LLC

would have it, even if there is no plurality within the corporation, the necessary plurality *as to the solely-owned corporation*, not just as to its human owner, can come with an outside person. All agree that Owner can conspire with Third-Party. On their theory, though, while Owner cannot conspire with himself in the form of his Solely-Owned Corporation, magically the presence of Third-Party enables both Owner and Solely-Owned Corporation to conspire with that Third-Party. What neither could do with the other, now both can do with the outsider. Magic; fiction without limits.

The government offered one case in support of its argument, which Sonag also cited: *United States v. Panhandle Trading, Inc.*, 2006 WL 1883436 (N.D. Fla. 2006). *See* United States' Response at 2, 8-9 (Docket No. 57, September 7, 2018). *Panhandle Trading* misapplied the plurality principle, in effect proposing to broaden and amend the indictment unconstitutionally, as Sonag explains below. But the government's reliance on a single unpublished district court decision from Florida was telling, especially given its dismissive attitude elsewhere to other circuits and older cases. *See, e.g.*, United States' Response at 5-6, 7 n.2. The magistrate judge found nothing more than the government.

The Court should not extend fiction here. The plurality principle remains an important limitation on conspiracy, which itself is a doctrine that threatens often to exceed the limits of its logic and to ensnare peripheral people on implied "agreements" that can be, well, fictional.

2.    Suppose that the government secured a second superseding indictment here that included present Count 1, and then repeated that count verbatim as a new Count 2.  Then suppose further that it did the same with present Count 14: included it again, and repeated it verbatim as a new Count 15.  In other words, suppose that two counts turned into four by mere duplication.

Although there would be but one trial on the new superseding indictment, no federal court would fail to strike the redundant versions of Counts 1 and 14.  Even in one trial, the government may not charge a defendant twice under the same statute for the very same offense.  Forcing someone to secure two acquittals from a jury on just one crime, in other words, would be double jeopardy even in a single trial.  *See Bell v. United States*, 349 U.S. 81 (1955) (transporting two women in one trip and in one car was only one Mann Act violation, where Congress did not evince clear intent to make each separate woman a unit of prosecution).

Indeed, this is the very reason that multiplicitous charges—those splitting one offense into two or more counts—violate the Fifth Amendment's Double Jeopardy Clause.  It also is the reason that a defendant may not be convicted and sentenced both on an offense and on a second, lesser offense included in the first.  *United States v. Chiaradio*, 684 F.3d 265, 272 (1st Cir. 2012) (multiplicity violates the Double Jeopardy Clause); *Brown v. Ohio,* 432 U.S. 161, 164-65 (1977) (no multiple punishments or convictions on lesser-included and

greater offenses); *United States v. Halliday*, 672 F.3d 462, 467-71 (7th Cir. 2012) (denying multiple-punishments double jeopardy claim under plain error standard); *see also Ex Parte Lange*, 85 U.S. (18 Wall.) 163 (1873) (roots of multiple punishments prohibition of Double Jeopardy Clause).[*]

      a.     On the magistrate judge's reasoning, this is what the current superseding indictment does in slightly different form. Rather than charging the same offense in two identical counts, it charges the same defendant twice, under two names, in the same counts. Counts 1 and 14 charge both Ganos and Sonag. The extended fiction collides with the Fifth Amendment.

      Sonag and Ganos themselves cannot conspire with each other: again, they are a unity, not a plurality. This much the magistrate judge and government concede. But on their shared view, adding third persons to a conspiracy count enables *both* Ganos *and* Sonag to conspire with others.

      That carries fiction too far. Sonag's agreement necessarily *is* Ganos's agreement—no more, no less. For Ganos is the only one with a mind or the capacity to agree who also can act for Sonag. Without Ganos, Sonag is empty, the null set: it has no second owner, no second person sharing control, no second employee. What Sonag does is only what Ganos does, period.

---

[*] The magistrate judge ruled summarily that Sonag forfeited a double jeopardy argument. Report & Recommendation (Docket No. 90) at 11. Not so. The duplicity and double jeopardy argument was a direct reply to the government's unanticipated argument in response. A trial in this case also remains months away. Duplicity and double jeopardy are arguments that Sonag could raise at trial, even at the close of the evidence in a Rule 29 motion. Until the Court decides what counts to submit to the jury, they are not tardy.

StrangBradley, LLC

On the magistrate judge's adoption of the government's reasoning, it follows that for Ganos to win on Count 1 or Count 14, the jury must acquit him not once but twice: in his own proper person, and as Sonag as well. If the jury acquits only Ganos the person, but convicts Sonag the solely-owned and controlled corporation, Ganos still will face punishment. The possible fines for Sonag well exceed those possible for Ganos individually, and Sonag also faces criminal forfeiture under the same indictment. Its property is Ganos's property—for tax purposes, for practical purposes, for all purposes in truth. Although not in successive trials, then, still Ganos must run the gantlet twice in one trial to avoid criminal punishment on Counts 1 and 14.

In short, the government's argument against Sonag's motion here would walk it and the Court straight into a double jeopardy problem for Ganos. That problem disappears if the Court simply applies the plurality principle and correctly dismisses both Counts 1 and 14 as to Sonag.

b.      More broadly, the government should be cautious about the consequences here of its applied effort to stretch a legal fiction to keep both Ganos and Sonag as defendants. Because that effort implicates Ganos's double jeopardy protections, there is an unconsidered cost. The Double Jeopardy Clause not only protects an accused from double punishment or two convictions for one offense: it protects him from standing trial at all if at risk of double jeopardy. To vindicate that double jeopardy protection, the Supreme Court has acknowledged

StrangBradley, LLC

a right to an interlocutory appeal on a good faith double jeopardy claim, because win or lose at trial, the trial itself would negate the clause's intended protection. *Abney v. United States*, 431 U.S. 651, 660-62 (1977).

Next, the magistrate judge and the government present a duplicity problem that this Court can avoid simply by not overextending a fiction. Everyone concedes that Ganos, a human being, *can* conspire with outside people. The dispute is the contention that Sonag somehow can conspire with outsiders apart from Ganos. So necessarily, on the magistrate judge's reasoning, and the government's, in Count 1 Sonag would have a conspiracy with Nuvo Construction and Mark Spindler and maybe others; and Ganos also would have a conspiracy with Nuvo, Spindler, and maybe others; but Ganos and Sonag could have no conspiracy only between themselves. In short, as the magistrate judge's understanding of a legal fiction extends it now, Count 1 would charge two separate conspiracies in one count: Sonag and others, excluding Ganos; and Ganos and others, excluding Sonag.

That would be a classic duplicitous charge problem. An indictment can charge only one crime per count, and a conspiracy count can charge only one conspiracy (although one conspiracy may have many criminal objectives; *see Braverman v. United States*, 317 U.S. 49 (1942)). When one count charges two conspiracies, there is no way to assure a unanimous verdict: some jurors might find only Conspiracy A proven and some might find only Conspiracy B proven,

StrangBradley, LLC

yet a general verdict on the single count would mask their lack of unanimity. That is the principal constitutional vice of duplicity.

There is a final Fifth Amendment problem with the magistrate judge's recommendation, too. The grand jury here clearly meant to charge only one conspiracy—one in which Ganos and Sonag, impossibly as a legal matter, conspired with each other. If this Court follows the magistrate judge in accepting the government's effort at mitosis to create two conspiracies in one count it will approve an amendment that would broaden, not narrow, the affected counts. For that reason, accepting the magistrate judge's recommendation would violate the Grand Jury Clause of the Fifth Amendment. *United States v. Miller*, 471 U.S. 130, 135-45 (1985) (variances that only narrow the proof offered in support of and included under a properly-pled count, and that do not broaden the count, are not fatal amendments under the Grand Jury Clause of the Fifth Amendment); *see also Stirone v. United States*, 361 U.S. 212 (1960).

c. The problems are the same in both Count 1 and Count 14, and perhaps even more acute in the latter. In Count 14, the only two charged conspirators are Sonag and Ganos. Two other make-weight alleged conspirators, Sonag I, LLC and Trinity Marketing Services, Inc., also are solely-owned and solely-controlled corporations belonging to Brian Ganos. The discovery identifies the other specific person referenced, "L.M." The government knows as well as the defendants that L.M. was an outside, independent professional

StrangBradley, LLC

consultant, not an agent of Sonag. The magistrate judge seemed to accept the fact that L.M. is an outside consultant. Report & Recommendation (Docket No. 90) at 8. So, Count 14 names solely-owned corporate entities that could not conspire with Ganos or Sonag as a matter of law, for want of plurality. It also names L.M. and the usual faceless stand-in suspects, others "known and unknown to the Grand Jury." On the government's reasoning, Count 14 would have to grow to allege two parallel conspiracies: Sonag and L.M. and maybe anonymous usual suspects, but not Ganos because he and Sonag could not conspire; and then Ganos and L.M., again maybe with anonymous usual suspects, but not Sonag. Count 14 certainly fares no better than Count 1.

This mitosis would broaden and amend both relevant counts of the superseding indictment—and so violate the Grand Jury Clause of the Fifth Amendment. That is why the district court in *Panhandle Trading* gives the government no help. That court's "remedy" was to instruct the jury that one defendant and his two solely-owned companies could not be found guilty of conspiring with each other, but to allow the jury to convict anyway because the conspiracy alleged eight outside individual and corporate defendants. *Panhandle Trading*, 2006 WL 1883436, at *4; United States' Response at 9. That instruction would not solve a plurality problem. It would create and add a Fifth Amendment problem.

StrangBradley, LLC

### E.    *The Right Result, With Fiction Properly Limited.*

Applied here, the right rule should mean this.  Brian Ganos may remain a defendant in Count 1, as the superseding indictment charges at least one other person (and maybe also one other corporation, provided that Nuvo had at least one human agent other than Ganos) with whom he personally might have conspired.  But as a matter of law, Sonag could not have conspired separately with anyone.  As to Sonag, Count 1 must be dismissed.

And as to Count 14, both Sonag and Ganos must be dismissed.  They are the only two named defendants in that count and the superseding indictment suggests nobody else with whom they legally could have conspired.  A single formulaic reference to "other persons and entities known and unknown to the Grand Jury" does not suffice.  The superseding indictment offers nothing to allow a jury or this Court to find the necessary internal plurality in Count 14.

At a bare minimum, even if one or both of these counts survive on their face, the Court will have to instruct the jury on the right rule.  Sonag and Ganos cannot join the same conspiracy, no matter how many outsiders may have reached an agreement with Ganos himself.  This Court can avoid a dismissal for now, Sonag supposes, by postponing a reckoning between truth and fiction.  But neither it nor the government can avoid dismissal of Counts 1 and 14 as to Sonag in the end, or at least a jury instruction that limits fiction to a realm consistent with truth-finding on nonfictional fact and evidence.

The magistrate judge's recommendation hinted at this possibility. *See* Report & Recommendation (Docket No. 90) at 13. But he remonstrated that dismissal now would be like killing a mosquito with a cannon. *Id*. No; a swatter will do. Almost all of the superseding indictment will remain. And there is nothing wrong with swatting a mosquito before it bites, rather than after.

## IV.

## CONCLUSION

Sonag Co., Inc. could not conspire with its sole owner, Brian Ganos, nor he with it. Neither could Sonag conspire with anyone else; only Ganos could. There was no essential plurality here, as between the man and his solely-owned corporation or between a solely-owned corporation and anyone else, to support a conspiracy. For that reason, the Court should dismiss both conspiracy charges, Counts 1 and 14, as to Sonag. It should dismiss Count 14 as to Ganos also, as he and Sonag are the only two charged with conspiracy in that count.

Alternatively, the Court should rule that it will instruct the trial jury that neither Sonag nor Brian Ganos can be convicted on Counts 1 and 14 unless the proof at trial establishes, beyond a reasonable doubt, that one or more other human beings within Sonag—its own employees or agents—conspired with Ganos to reach the agreements alleged in those counts.

Dated at Madison, Wisconsin, December 9, 2018.

Respectfully submitted,

SONAG CO., INC., *Defendant*

*/s/ Dean A. Strang*

Dean A. Strang
*Wisconsin Bar No. 1009868*
John H. Bradley
*Wisconsin Bar No. 1053124*

STRANGBRADLEY, LLC
33 East Main Street, Suite 400
Madison, Wisconsin 53703
[608] 535-1550
dean@strangbradley.com